INTERBOROUGH RAPID TRANSIT CO. v. LITTLEFIELD.    (No. 6287.)

(Supreme Court, Appellate Division, First Department.    November 6, 1914.)

1. COVENANTS (§ 17*)—IMPLIED COVENANT—DESCRIPTION OF PREMISES.

Where a contract for the sale of city lots described the land as bounded on the southerly and westerly sides by streets, but the vendor had no fee or rights in either of the streets, there was no implied covenant that the streets described had been legally opened, or that the streets existed and would remain open for light, air, and access to the abutting property.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 14–16; Dec. Dig. § 17.*]

2. VENDOR AND PURCHASER (§ 22*)—CONTRACT—DESCRIPTION OF PROPERTY—BULKHEAD LINE—LOCATION.

Where a contract to convey city lots was expressly made subject to the use and control by the city, state, and United States of so much of the land as lay east of the bulkhead line, the location of which had been established under authority of the Secretary of War on the United States government map filed in the office of the War Department, the contract was not incomplete because the location of the line was not fixed therein.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 27; Dec. Dig. § 22.*]

3. VENDOR AND PURCHASER (§ 34*)—CONTRACT—DESCRIPTION OF PROPERTY—DUTY OF VENDOR.

Where a contract to convey city lots was subject to the use and control by the city, state, and United States of so much of the land as lay east of the bulkhead line, located by the United States, and the purchaser's attention was directed, by a report on the title, to the line as established by the United States War Department and shown on a government map, the vendor was under no obligation to inform plaintiff as to the location of such line.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 39; Dec. Dig. § 34.*]

4. VENDOR AND PURCHASER (§ 112*)—CONTRACT—BREACH.

Where a contract provided for the sale of lots bordering on the East River, the purchaser could not refuse to perform because alleged filling outside the bulkhead line constituted an incumbrance, in the absence of any evidence that the filling had been done without the authority of the Secretary of War, under Act Aug. 11, 1888, c. 860, § 12, 25 Stat. 425, as amended by Act Sept. 19, 1890, c. 907, § 12, 26 Stat. 455, and Act March 3, 1899, c. 425, § 11, 30 Stat. 1151 (U. S. Comp. St. 1913, § 9912), providing that no deposits shall be made beyond the established bulkhead line, except under such regulations prescribed by the Secretary of War.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 199, 200; Dec. Dig. § 112.*]

Appeal from Special Term, New York County.

Action by the Interborough Rapid Transit Company against Charles E. Littlefield. Judgment for defendant on a counterclaim for specific performance, and plaintiff appeals. Affirmed.

The following is the opinion of Greenbaum, J., at Special Term:

This action is brought to enforce a vendee's lien for the sum of $5,000 paid by the plaintiff on account of the purchase price of a plot of land under a contract of sale made between it and the executor of Mary G. Pinkney, deceased. Subsequent to the making of the contract said executor died, and the defendant Charles E. Littlefield was appointed administrator with the will annexed. The defendant counterclaims for specific performance of the contract, which provides in part that the vendor agrees to sell and convey to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the plaintiff "all that certain block, piece, or parcel of land  *  *  *  bounded and described as follows: Northerly by the southerly side of 148th street; easterly by the southwesterly side of a street known as Exterior street, as shown on a certain map entitled 'Map of Exterior Street in the City of New York along the shore of the Harlem River from 89th Street on the East River to the North or Hudson River, laid down in conformity with the exterior lines as established by the Harbor Commissioners by virtue of an Act of the Legislature passed April 17, 1857,' surveyed in accordance with the resolution of the common council approved October 26, 1858, by H. V. Southard,  *  *  *  city surveyor, 1858 and 1858 (sic) ; southerly by the northerly side of 147th street; westerly by the easterly side of Lenox avenue, subject to a state of facts shown upon the survey of said premises made by George C. Hollerith and dated April 21, 1911, which survey has been exhibited to the party of the second part; also subject to the rights of the city of New York and state of New York and of the United States of America to regulate and control the use of so much of the premises as lies outside of the bulkhead line. *  *  *  The title which the party of the first part shall convey and the party of the second part shall accept shall be such as the Title Guarantee & Trust Company will approve and insure, subject to the incumbrances herein stated."

The survey referred to bounds the northerly and southerly sides of the property by West 147th and 148th streets, and indicates an apparent frontage of approximately 260 feet on 147th street and 135 feet on 148th street. The survey, however, also describes the northerly and southerly boundaries of the property as the northerly and southerly lines of the dock, pier, or bulkhead proposed by the department of docks and ferries. The bulkhead line referred to in the contract is nowhere fixed upon the survey. According to another survey made with reference to the position of the bulkhead line as established upon the United States government map under authority of the War Department, which map, however, was not before the parties when the contract was executed, by far the greater part of the land lies east of the bulkhead line, and that part lying west of the line has a frontage of 106.90 feet on 147th street and no frontage whatever on 148th street. Plaintiff refused to take title to the premises in question for reasons that will now be considered seriatim.

[1] First. The Title Guarantee & Trust Company had informed plaintiff "that its policy will not insure that so much of 147th street and 148th street as are east of the bulkhead line as now established have been legally opened or are existing streets and that no rights whatever therein will be insured," because it appeared that said streets had not been legally opened east of the bulkhead line. The Title Company, however, approved the title and was ready to insure it in accordance with the provisions of the contract; that is to say, subject to the incumbrances therein stated. It is contended by plaintiff that there was an implied covenant by the seller that the property to be conveyed was bounded on the northerly, southerly, and westerly sides by streets which had been legally opened, and cites in support of its position numerous authorities which recognize the well-established principle that as between grantors and grantees of land bounded on a street there is an implied covenant by the former that the street exists and shall remain open as a street for light, air, and right of access to such abutting property. But these are cases where the grantor owns the land described as a street bounding the premises conveyed. White's Bank of Buffalo v. Nichols, 64 N. Y. 65, 73 ; Haight v. Littlefield, 147 N. Y. 338, 341, 41 N. E. 696.

This rule is inapplicable where the grantor has no fee or rights in the highway or street. This distinction is clearly expressed in Fulmer v. Bates, 118 Tenn. 731, 102 S. W. 900, 10 L. R. A. (N. S.) 964, 121 Am. St. Rep. 1059. There defendant conveyed to the complainant certain real estate in Memphis by the following description: "Lots Nos. 1 and 2 of part of lot 5, block 53, of the plan of South Memphis, fronting 37½ feet each on the south side of Linden street, and running back south, between parallel lines, 154 feet, to a 20-foot alley in the rear." No alley in fact existed, nor did the defendant own the soil in the rear of said lots. The complaint was dismissed. Upon appeal the court, in upholding the judgment, said: "There is a marked distinction between the case of a grantor who owns the street or alley which his deed describes as bounding

the property conveyed and one who does not. In the former case, although there may not be an express warranty on the subject, the grantor is estopped from denying the existence of the street or alley. In the latter case, the reference is only descriptive and no warranty is implied. The conflict of authority on this subject is more apparent than real, depending upon into which of the two classes the cases fall."

In Howe v. Alger, 86 Mass. (4 Allen) 206, the land was conveyed as bounding on certain streets, but the grantor had no interest in the adjacent land so described. The action was brought to recover damages upon the theory of a breach of an implied covenant as to the existence of the streets. In rendering judgment for the defendant the court says: "Without a further or more extended examination of the cases cited by the plaintiff, it is sufficient to say that in all the cases cited under this head the grantor was the owner of the adjacent land described in the boundary as a street or way, and that the decision of the cases in favor of the various grantees required nothing further than the application of the doctrine of estoppel to the grantors, and those claiming under them, to deny the existence of the street."

In Holloway v. Delano, 64 Hun, 34, 18 N. Y. Supp. 704, affirmed, 139 N. Y. 390, 34 N. E. 1047, 1052, where a similar question was under consideration, it is said: "That an owner of land does acquire an interest in a street abutting on his property where the conveyance of such property to such owner bounds the property by the street, and where the grantor owned the fee of the street, even though the conveyance excludes the fee of the street separate and distinct from the right of the public to use the street as a public road or highway, is clear upon principle, and is settled by authority; and such right arises from the implied covenant in the deed, when it conveys the property bounding it by the street, that there is a street, and that, so far as the property of the owner of the fee in the street is concerned, such parts of the streets as abutted on the property conveyed shall remain open as a street for light, air and right of access to such abutting property."

It is therefore clear that no implied covenant that the land described as 147th and 148th streets formed existing streets may be predicated upon this contract.

[2] Second. The next point urged by the plaintiff, that the contract is incomplete in that the location of the bulkhead line is not fixed therein, seems to me without merit. The contract to convey is expressly made subject to the use and control by the city and state of New York and of the United States of so much of the land as lies east of the bulkhead line, the location of which had then been established under authority of the Secretary of War upon the United States government map filed in the office of the War Department.

[3] Third. The contention that the vendor was obliged to inform the purchaser of the location of the bulkhead line seems to me untenable. While Mr. Ross, the vice president of the plaintiff, testified that he was ignorant of its location, it appears from Mr. Randall's testimony that prior to the execution of the contract for the purchase of the property both Mr. Ross and Mr. Norton, the attorney for the plaintiff, examined the report of the Title Company, which stated that it would not "guarantee any right to fill in with solid filling any part of the premises described which lies east of the bulkhead line established by the War Department of the United States in 1890 or 1891," and excepted "all rights of the city of New York and state of (sic) and the United States government to regulate and control the use of so much of the premises as lies east of said bulkhead line." The attention of the plaintiff corporation was thus unequivocally directed to the fact of the existence of a bulkhead line upon the premises, and it would seem that if it was unaware of its precise or approximate location, and desired, before executing the contract, to be advised in relation thereto, it should have inquired either of the vendor, his attorneys, or the Title Company, or resorted to the public records for information concerning it. There was no suppression of a fact, as in King v. Knapp, 59 N. Y. 462, and as the location of the line of the bulkhead was not a fact peculiarly within the knowledge of the vendor, no affirmative duty rested upon him to make disclosure thereof to the vendee. Schumaker v. Mather, 133 N. Y. 590, 596, 30 N. E. 755. Nor

could the plaintiff have been misled or deceived as to the location of the bulk-head line by anything appearing in either the contract or the survey therein referred to, as its location does not appear in either of them.

[4] Fourth. Plaintiff also contends that the filling outside of the bulkhead line constituted an incumbrance. The United States statutes provide that no deposits be made beyond the established bulkhead line "except under such regulations as may be prescribed from time to time" by the Secretary of War. 25 Stat. 425, § 12, c. 860; 26 Stat. 455, § 12, c. 907; 30 Stat. 1151, § 11, c. 425. In respect of this point, it is sufficient to say that, independent of any other consideration, there is an absence of legal proof that this alleged filling was done without the authority of the Secretary of War. Plaintiff's argument that in any event specific performance should be refused in the exercise of the court's discretion, for the reason that the contract is unfair, is fully met by the fact that there is not a particle of evidence of such unfairness, nor is there any testimony that tends to show that plaintiff was misled into making the contract by act of the defendant.

It follows that the complaint must be dismissed upon the merits, and plaintiff compelled specifically to perform its contract. Findings passed upon.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

C. T. Adams, of New York City, for appellant.
A. I. Elkus, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of Greenbaum, J. Order filed.

─────────────

(164 App. Div. 259)

WATTS v. DOULL MILLER CO. (No. 6129.)

(Supreme Court, Appellate Division, First Department. November 6, 1914.)

1. TRIAL (§ 387*)—FINDINGS—SUFFICIENCY OF FINDINGS—"DECISION."

Code Civ. Proc. § 1022, requiring a "decision" to state separately the facts found and the conclusions of law and direct entry of judgment, is not complied with by noting the words "Found" or "Refused" after requests to find, with the initials of the trial justice beneath, printed in the judgment roll and indexed in the record as the decision; such decision being not merely an imperfect, but an invalid decision.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 903–907; Dec. Dig. § 387.*

For other definitions, see Words and Phrases, First and Second Series, Decision.]

2. TRIAL (§ 396*)—ACTION FOR BREACH OF CONTRACT—FINDINGS—CONFORMITY TO PLEADINGS.

Where the complaint alleged a breach of a contract whereby defendant was to finance plaintiff's business, which was obtaining orders for the manufacture of dress goods, in that defendant, who was to guarantee such orders to the manufacturer, refused to permit the placing with mills of many orders of solvent customers which plaintiff had obtained, and the evidence was that deliveries were made to the buyer from the mills, after payment by and the receipt of the shipping orders from defendant, findings that defendant breached the contract by failing to "fill" confirmed and approved orders in full, and only "delivered" part of such order, were not within the issues and evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 935–938; Dec. Dig. § 396.*]

─────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes